UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CR-28-GNS

UNITED STATES OF AMERICA,                                                                                   Plaintiff,

v.

MELVIN P. CARR,                                                                                                Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court on a Motion to Suppress filed by Defendant, Melvin P. Carr ("Carr"). (DN 19.) The United States filed a Response to the Motion. (DN 20.) The Motion to Suppress was referred to the undersigned Magistrate Judge by Chief District Judge Greg N. Stivers for a hearing, if necessary, and for findings of fact, conclusions of law, and recommendation. (DN 21.) The undersigned held an evidentiary hearing on November 1, 2019, and then set a deadline for the Parties to file post-hearing briefs. (DNs 26, 27.) Both Defendant Carr and the United States submitted a post-hearing brief. (DNs 31, 34.) The United States also submitted the body camera footage from the incident in question. (DN 28.) The undersigned also set a supplemental evidentiary hearing (DN 35), which was held on February 13, 2020 (DN 40). Therefore, this matter is now ripe for review.

For the reasons stated herein, the undersigned **RECOMMENDS** that Carr's Motion to Suppress (DN 19) be **DENIED** in part and **DENIED WITHOUT PREJDUICE** in part as moot.

**I.      FINDINGS OF FACT**

On August 19, 2017, in the midafternoon, Officer Kyle Seng ("Officer Seng"), a patrol officer with the Louisville Metro Police Department ("LMPD"), was traveling westbound on Rowan Street in the Portland neighborhood near the intersection of 25th and Rowan Streets when

he observed a black vehicle that had full window tint below the AS1 line on the vehicle's front windshield in violation of Kentucky law. (DN 29, at PageID # 55, 58.)[1]  Officer Seng testified that the vehicle was actually equipped with full limo tint all the way around the vehicle. (*Id.* at 55.)  Officer Seng did a u-turn in order to make a traffic stop on the vehicle and initiated his emergency equipment. (*Id.*)  Pursuant to standard procedure, additional officers arrived on scene to backup Officer Seng. (*Id.* at 72-73, 101, 120.)  Because Officer Seng and other officers had recently completed a run in the same general area, numerous officers arrived on scene shortly after Officer Seng initiated the stop.[2]  (*Id.* at 101-102, 116.)  LMPD Officer Benjamin Dean ("Officer Dean"), who assisted with the August 19, 2017, traffic stop, testified that the number of vehicles that respond to provide backup for a traffic stop depends on a number of factors, including the area of town and the number of people inside the vehicle. (*Id.* at 121.)

      The vehicle was pulling over to the curb as Officer Seng stopped his patrol car and stepped out. (*Id.* at 56.)  The vehicle's driver, later identified as Defendant Carr, was exiting the vehicle as Officer Seng approached. (*Id.*)  Officer Seng asked Carr to remain in his vehicle. (*Id.*)  As he approached, Officer Seng testified that he smelled the odor of burnt marijuana emanating from inside the vehicle. (*Id.*)  Though Officer Seng could not remember exactly where he was when he smelled the marijuana, he testified that he believed he was somewhere alongside Carr's vehicle when he first smelled it as opposed to near his patrol car or between his patrol car and Carr's vehicle. (*Id.* at 14-16.)  Officer Seng observed a female in the passenger seat, who was later established to be sixteen years old. (*Id.* at 56.)  Officer Seng asked Carr to remain in the vehicle

---

[1] The undersigned will refer to the transcript of the November 1, 2019, evidentiary hearing (DN 29) by reference to the Page ID#s found in the header placed on the transcript by the Clerk at the time of filing, not the internal page numbers of the transcript itself.
[2] Neither of the officers who testified at the evidentiary hearing could recall any details about the incident the officers responded to prior to the traffic stop of Carr. (*Id.* at 75-76, 115-17.)

and returned to his patrol car to check Carr's license and registration while other officers began to speak with Carr and the passenger. (*Id.* at 57; DN 28, 000076.mp4, at 00:00-01:13 [hereinafter "Seng Bodycam #1"].)[3] From the investigation he conducted in his patrol car, Officer Seng determined that Carr was a convicted felon. (DN 29, at PageID # 57; Seng Bodycam #1, at 7:23-30, 9:03-10:15.)

While Officer Seng was in his patrol car running Carr's information, Officers Dean, Stafford, Weber, and Despain stayed with Carr and the female passenger. Officers Weber and Stafford approached the right side of the vehicle and began to speak with the female passenger. (DN 28, 000082.mp4, at 00:00-04:00 [hereinafter "Weber Bodycam #1"].) Both Officers Dean and Weber made remarks about the smell of marijuana while standing near the vehicle. (Weber Bodycam #1, at 01:27-31, 01:51-55, 02:33-38; DN 28, 000044.mp4, at 0:43-51 [hereinafter "Dean Bodycam"]; DN 29, at PageID # 102.)[4] While Officers Weber and Stafford spoke with the passenger, Officer Despain stayed with Carr at the request of Officer Seng. (DN 28, 000045.mp4, at 04:04-09 [hereinafter "Despain Bodycam #1"]; Seng Bodycam #1, at 0:56-1:08.) Eventually, Officer Despain asked Carr to step out of the vehicle. (Despain Bodycam #1, at 06:00-16; DN 29,

---

[3] Because the bodycam footage submitted by the United States does not contain internal date and timestamps, the Court will refer to all bodycam footage by the number of minutes and seconds that elapsed from the beginning of the cited recording. Additionally, the bodycam footage submitted did not delineate which video belonged to which officer and contained duplicates of several videos. Accordingly, based on review of the bodycam videos themselves and the testimony provided at the evidentiary hearing, the undersigned finds that (1) 000076.mp4, 000077.mp4, and 000078.mp4 are Officer Seng's bodycam video; (2) 000044.mp4 is Officer Dean's bodycam video; (3) 000082.mp4, 000081.mp4, and 000080.mp4 are Officer Weber's bodycam video; and (4) 000045.mp4 and 000046.mp4 are Officer Despain's bodycam video. The undersigned further finds that 000044.mp4 and 000073.mp4 are duplicates of the same video, that 000045.mp4 and 000074.mp4 are duplicates of the same video, and that 000046.mp4 and 000075.mp4 are likewise duplicates of the same video. The undersigned was unable to determine from which officer 000079.mp4 was taken. Further, the undersigned was unable to open 000047.mp4. However, because neither Carr nor the United States explicitly referenced 000079.mp4 or 000047.mp4 in their post-hearing briefs, the undersigned will not rely on those two files in making the instant findings and recommendation.

[4] Officer Weber first remarked that she could not tell if it was coming from the car or the patio. (Weber Bodycam #1, at 01:27-31.) When the passenger opened the car door, Officer Weber remarked that she was right and "could smell it through the closed door." (*Id.* at 01:51-55.) Shortly thereafter, she stated that she "was about to get a contact high." (*Id.* at 02:33-38.) Officer Dean, while standing behind Officers Weber and Stafford remarked, "Whew. I can smell it from right here." (Dean Bodycam, at 0:43-51; DN 29, at PageID # 102.)

3

at PageID # 102.) After Carr exited the vehicle, Officer Dean looked under the driver's seat and found a gun (Dean Bodycam, at 05:12-6:06; DN 29, at PageID # 102-03.) When Officer Dean located the gun, Officer Despain placed Carr in handcuffs. (Despain Bodycam #1, at 07:53-8:34.)

## II.	CONCLUSIONS OF LAW

Carr argued that the officers lacked probable cause to search his automobile, that the stop was pretextual, and that he was denied his Miranda rights before admitting to ownership of the gun and admitting that he was a convicted felon. (DN 19; DN 31, at PageID # 136.) The Court will address the stop of Carr's vehicle, subsequent search, and *Miranda* issue separately below.

### A.	Vehicle Stop

Carr argued that law enforcement did not have the requisite level of reasonable suspicion to stop Carr's vehicle based on a "window tinting violation." (DN 31, at PageID # 137.) Instead, Carr argued that law enforcement "stopped Carr as part of the aggressive policing of the West End . . . ." (*Id.*) It is Carr's burden to establish that the challenged seizure violated his constitutional rights. *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. U.S. CONST. AMEND. IV. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention is quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A law enforcement officer is permitted to stop a vehicle if he has probable cause to believe that a civil traffic violation has occurred. *United States v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016); *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008); *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). "Probable cause is a reasonable

ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).

Here, Officer Seng testified that he stopped Carr because Carr's window tint was in violation of Kentucky law. (DN 29, at PageID # 55.) He stated that he observed the tint of Carr's front windshield as he passed Carr's vehicle while traveling westbound on Rowan Street. (*Id.*) Carr's only attempt to discredit this testimony was to argue that Officer Seng stopped Carr "as part of the aggressive policing of the West End" and that therefore, the stop was merely a pretext to search for guns. (DN 31, at PageID # 137.) In support of his argument that a pretextual stop is impermissible, Carr cited in his motion to *United States v. Guzman*, 864 F.2d 1512 (10th Cir. 1988). (DN 19-1, at PageID # 38.) While *Guzman* does address the constitutionality of pretextual stops, in addition to merely being persuasive authority, *Guzman* was overruled by the Tenth Circuit in *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) ("Because the *Guzman* standard is unworkable, we now adopt a new standard . . . ."). Carr's Motion did not disclose that *Guzman* had been overruled. Carr's Motion likewise did not acknowledge that *Guzman* is contrary to binding Sixth Circuit precedent that holds that "[t]he subjective intent of the officer making the stop is irrelevant in determining whether the stop violated the defendant's Fourth Amendment rights." *Collazo*, 818 F.3d at 253 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996) and *Blair*, 524 F.3d at 748). Indeed, the Sixth Circuit has stated that a police officer may stop a vehicle for "any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or contraband would be found as a result of the stop." *Blair*, 524 F.3d at 748 (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). Accordingly, Carr's argument that the stop was pretextual is not well-founded.

Carr did not acknowledge or even address whether the window tint on his vehicle actually violated Kentucky law. At the evidentiary hearing in this matter, Carr's counsel referred repeatedly to the reason for the stop as "excessive tinting" or a "window tint" issue. (DN 29, at PageID # 60, 77, 81, 85, 89, 121-23.) However, Seng testified that he stopped Carr for the more readily apparent violation of window tint below the AS1 line on the front windshield of Carr's vehicle that obstructed the windshield. (*Id.* at 55.) As Carr has offered no evidence to dispute that Officer Seng observed a violation of Kentucky's law regarding an obstructed windshield, the undersigned finds that the stop of Carr's vehicle was based on probable cause to believe that a civil traffic violation had occurred and comported with the Fourth Amendment.

### B. Search of Carr's Vehicle

Carr argued that law enforcement lacked probable cause to search his vehicle. (DN 31, at PageID # 137-38.) While the Constitution ordinarily requires law enforcement to obtain a warrant prior to conducting a search, there are exceptions to this requirement. *See, e.g.*, *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). One such exception "exists when law enforcement officers have probable cause to believe that a vehicle may contain evidence of a crime." *United States v. Williams*, 650 F. Supp.2d 633, 669 (W.D. Ky. 2009); *see also United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998). Probable cause in the context of the automobile exception is defined the same as probable cause in the context of a search warrant. *Williams,* 650 F.Supp.2d at 670. Probable cause is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion" and exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 527 (1983)). Determining whether there is probable cause for a

particular search is a "commonsense, practical" determination that the court must assess from the totality of the circumstances. *See, e.g.*, *Smith*, 510 F.3d at 648 (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998)).

Here, multiple law enforcement officers, including Officer Seng who initiated the traffic stop, remarked on the strong scent of burnt marijuana emanating from Carr's vehicle. The Sixth Circuit has held that "the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008); *see also United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) ("[W]e find that Agent Perman's smelling the marijuana then constituted probable cause to believe that there was marijuana in the vehicle."); *United Sates v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002) ("This court has held that an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search."). Therefore, the undersigned finds that the smell of marijuana was sufficient for the officers to believe that a fair probability existed that marijuana would be found in Carr's vehicle.[5] Accordingly, the undersigned finds that the search of Carr's vehicle was supported by probable cause and comported with the Fourth Amendment.

### C. Miranda Warnings

Carr argued that he was not warned prior to admitting to ownership of the gun and admitting that he was a convicted felon in violation of his Fifth Amendment rights. (DN 31, at PageID # 136.) After reviewing the transcript of the evidentiary hearing held in this case, the body camera footage, and the Parties' post-hearing briefs, the undersigned found the present record insufficient to issue a report and recommendation on Carr's *Miranda* argument and set a

---

[5] Though Carr argued in his post-hearing brief that he did not consent to the search of his vehicle, the undersigned need not address this argument because the United States did not argue Carr consented to the search and the undersigned has concluded an alternative exception to the warrant requirement applied.

supplemental evidentiary hearing to develop this issue. (DN 35.) At that supplemental hearing, the United States represented that it would not seek to use any of Carr's statements made during the stop in its case-in-chief. (DN 40.) The undersigned finds this mooted Carr's motion to suppress as to his *Miranda* argument. Accordingly, the undersigned recommends that Carr's motion be denied without prejudice as moot as to his statements during the stop with leave to reinstate if the United States seeks to introduce the evidence in the future.

### III. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Carr's Motion to Suppress (DN 19) be **DENIED** in part and **DENIED WITHOUT PREJDUICE** in part as moot.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record
February 20, 2020

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).